The next matter on our calendar is the first of two cases that have a similar factual background, but are separate cases with separate parties. The first case is Severstal Wheeling v. WHX Corporation. Thank you. Good morning. Good morning. And please report. I'm Joseph Barton on behalf of the Plaintiffs, which is the Severstal Retirement Committee, the current committee and its current members. This appeal concerns the district court's dismissal of the complaint against WHX Corporation, which was one of the two sets of defendants, WHX Corporation and WPN. The case was dismissed against WHX and proceeded to trial and judgments against WPN and Leveaux. The court dismissed the complaint against WHX because the district court found that the complaint failed to adequately allege that WHX had legal authority over the Severstal plant assets and therefore was not a fiduciary, and secondly, that the allegation that WHX was a knowing participant in the fiduciary breach by WPN and Mr. Leveaux was sufficient, and that was solely based on the prayer for relief in which the district court found that the complaint failed to adequately plead a claim for equitable relief. All right. Tell me what WHX did or did not do that would give you the right to seek damages from them or relief. So, and to be clear, under ERISA, we don't get damages. We can get monetary relief. We can get monetary relief that is equitable in nature, either against fiduciaries or against non-fiduciaries. At the time, in 2008, the Severstal plant assets and the WHX plant assets were commingled in a common trust. There was a spinoff that was going to occur in a divergent of the assets of those, of the plant assets. The allegation is that, first of all, that WHX had legal authority and control over the combined trust. They were the ones with authority over the combined trust. There was an agreement that was reached between the fiduciaries of Severstal and the fiduciaries of WHX in terms of how that was going to occur, and namely that they would get a proportionate share of those assets. Can I ask about this? So what they get, you're going to tell us, is this Neuberger-Berman account, right? Correct. Do I misunderstand, or are the assets in that account liquid assets? That is, they could be sold freely in the marketplace? They were publicly traded. The issue is that at the time of the transfer, it was not possible to liquidate them because there was no investment management agreement. Well, there was no investment management, no active management. Well, this has to do with what your people, your retirement committee, and the investment manager at WPN did or didn't do to form an account or take charge of the account. But these are liquid assets. So what I'm having trouble understanding is you may not like those securities. You allege that these are somehow toxic assets and that WHX didn't want them, although I don't understand why. If WHX didn't want them, it couldn't just sell them. So I'm having trouble understanding if this represents approximately— I understand there's a little bit of disparity, but that's not the point of the litigation. If this represents approximately 10% of the total assets, why is there some breach of fiduciary duty on the part of WHX in transferring these assets to you? After that, they have no control over what you do with them. If you fail to open an account or your investment manager breaches some obligation to you to give you advice to open the account or take charge of these assets, that's on you and them. That's not on WHX, is it? It's like they gave you cash. You say, I don't want cash. I don't know what to do with cash. I want a pro rata share of all your securities. And they say, I'll give you cash. Why is that some kind of breach of their fiduciary obligation, which let's say for the sake of argument they do have because up to this point they're managing your assets? Let me just make clear. For purposes of the 502A3 claim, the claim is them as a non-fiduciary. It's irrelevant of whether they breached the fiduciary duty. The only relevant question is whether or not Lebeau breached the fiduciary duty. And whether they— They knew about it. But the same problem applies with Lebeau. I have no problem with—well, we'll hear about it in the next case. The argument that Lebeau then breaches a fiduciary duty by not making your guys aware of what they need to do to unload these assets and diversify. But I just don't understand why if the former—the company that is in charge of the total merged funds gives you assets that are worth what you're entitled to, why does it matter what they give you? If at that moment it's worth what it's worth and all you have to do is sign some papers with Newberg or Berman, and you can then unload them and get whatever you like with your money, what's wrong with what they did? And how are they aiding and abetting? Why is Lebeau doing anything wrong in recommending transferring that asset as opposed to in not telling you, okay, you've now got your money, but you've got it in a non-diversified form, and we should take immediate steps to sell that and get something else instead? So those really impact two separate things. And let me go to—I'll address the fiduciary breach part first and then go to the knowing participation in Lebeau's breach. So, first of all, what the Seversol plans owned in 2008 were a 10 percent interest in each of the assets. That's what their ownership interest was. They have the decision-making in terms of what to do with that. They had reached an agreement with WHX in terms of how that was going to be divided. To breach the agreement is a breach of fiduciary duties. To put a plan into undiversified assets is also a breach of fiduciary duties. You have an obligation as a fiduciary to ensure that you have diversified assets. But that's WPN. What did WHX do? WHX was—with respect to the fiduciary breach part, they were responsible for directing the transfer. The transfer occurred on November 3rd. It was before anything—and to be clear, it's not my clients. It's the former fiduciary. Before the former fiduciaries of the Seversol plans had done anything, the transfer occurred on November 3rd. It was complete. With respect—and they also knowingly participated in that breach. The extent—that is a breach. There is a breach with respect to what Mr. Lebeau did. They had knowledge that Mr. Lebeau was a fiduciary. They had knowledge that he—of the circumstances of the breach. That's what they have to know is the facts and circumstances. They knew there was an agreement of how to transfer. The CEO of WHX questioned why there was going to be a change. There was no information or communication. There was an agreement between the Seversol Retirement Committee and Lebeau on WPN, or there was an agreement between Seversol and WHX? There was an agreement between Seversol and WHX. And what is specifically alleged in the complaint is that Mr. DiClemente, the former member of Seversol Committee, had told Mr. Kassin at WHX, this is how we want it. We want it proportionate share. That is actually embodied in an agreement that they both signed, and what came out in the discovery and trial is that that was actually provided to Mr. Lebeau. So what is alleged in the complaint is the basis of an agreement between WHX and Seversol. Thank you. You have two minutes for rebuttal. Thank you. We'll hear from WHX. Good morning, Your Honors. May it please the Court, Lisa Saulbacken for WHX. Your Honors, just to address the point that my colleague is making with respect to the agreement, my understanding is he is referencing an agreement that was subsequently changed with agreement by Seversol that it had to be the Neuberger-Berman account to be transferred. In fact, it was Seversol that actually issued a direction letter, also WPN-Lebeau, and WHX simply authorized the removal of the Neuberger-Berman account. So I think, at least my understanding of the complaint, is that the agreement that he is referencing is one that was early on and then subsequently, I guess, modified or amended by the parties who then agreed to distribute just the Neuberger-Berman account. So your argument is WHX knew nothing, didn't know what was going on? No. They certainly authorized, at their request, Mr. DiClemente issued a letter. Lebeau also directed that the Neuberger-Berman account be removed. So they certainly were aware and authorized the trustee at the time, which was Citigroup, to transfer the Neuberger-Berman account. But didn't Seversol request pro rata transfer of the whole portfolio and not just the Neuberger-Berman account, and didn't WHX block that? Well, they don't allege that WHX blocked that. They allege that WPN, through Lebeau, told both parties, both Seversol and WHX, that it couldn't be accomplished for whatever reason. Then they subsequently go on. So that happens, I believe, in September. Then, subsequent to that, the parties agree to move the Neuberger-Berman account, and Seversol agrees to that. And this is in paragraph 55 of their amended complaint, where they concede that they expected the transfer of the Neuberger-Berman account. This is Seversol's complaint, saying they expected the transfer of these assets, except they expected them to be diversified subsequent to the transfer. So even when you say the parties agreed to change, it's not clear to me that WHX ever, other than nominally, agrees to a change. It's not like they have a negotiation with Seversol and say, how about we do this instead of that, or you want to do that? Okay, well, if you do, we agree to it. It's more just that Lebeau tells the parties it can't work that way, and Seversol instructs that it be done the way Lebeau wants, and WHX says, if that's what you want, that's fine. Right, that's correct, Your Honor. And, in fact, this isn't really even the breach that they argued below. The argument that the prior agreement in September was a contract that gave rise to a subsequent fiduciary breach isn't even something that was before the district court. And, in fact, the district court subsequently determined in another decision below that the transfer itself wasn't what they were complaining about. What they were complaining about was the failure to manage or diversify subsequent to the transfer. I'm sorry, just the transfer of the Neuberger Berman. The lower court, that's correct. That's what the lower court said. No, the lower court said, and just to give Your Honor a reference, I believe it's 276 of the joint appendix in the court's decision where the court says, listen, we're not arguing about the transfer, the transfer they asked for. The issue, according to Seversol, is the subsequent failure to diversify, manage, or monitor those funds. And, at that point, WHX is completely out of it. But wasn't WHX responsible for getting their proportional share? That was not the agreement. And, in fact, this is the first time that we're hearing that this is the fiduciary breach that's at issue in this case. Their entire complaint is geared towards the losses that they sustained subsequent to the transfer as a result of having not received a proportionate share. And they also concede in their pleading that they, and this is at paragraph, I believe it's 55 of their pleading, where they say they expected the Neuberger Berman account. So the agreement he's talking about, my understanding is that was alleged to have occurred in September. Subsequent to September, the parties speak to Lebeau, and Lebeau says, listen, I can't do that. I can't do the slice that you requested. We're going to have to just get over an asset collection that is the equivalent amount. And that's the moment where WHX failed in their fiduciary duty, isn't it? Well, WHX had no control over it. In fact, they directed, they followed WPN's recommendation and recommended and directed WHX to send over the Neuberger Berman account. So this money couldn't have left without them saying this is what we want. One way or another, they're supposed to get 10 percent of what's in the funds, and they agreed with Lebeau that, maybe mistakenly, maybe on Lebeau's foolish advice, that the Neuberger Berman account is approximately 10 percent, and that's the most efficient way of getting it over. Precisely. That's exactly right. So they gave up their claim for the 10 percent pretty mildly, right? They didn't say, when Lebeau said, I can't slice it up that way, they didn't say, but you have to? That's all right? There's nothing really about that in the pleading, Your Honor. So the pleading doesn't go into detail.  WPN informs them that they can't have the slice, so the parties agree that they're going to do the Neuberger Berman account. Is it your understanding that there is an argument by Severstall that they had some absolute right to a 10 percent pro rata slice? Absolutely not. And that does appear to be what my colleague is saying today, but that's not what they argued below, and that's not what's in their complaint. Their complaint doesn't seek that at all. If they had argued that, maybe you're not prepared to deal with that because you're saying they didn't raise it before, but if they had asked, insisted on a 10 percent slice, are they entitled, would they have been entitled to that? Your Honor, I don't think so because that would essentially be some type of restitution claim, and they didn't sue WHF in a restitution claim. It wouldn't be a restitution claim. I'm not asking about after the litigation claims. I'm asking at that time if they had said, by God, we own an undivided 10 percent slice, and so you have to divide it up that way, could they have insisted on that? Did they have any legal right to that? I'm not sure they do. Frankly, Your Honor, I wouldn't know. All I know is that they didn't insist, as Your Honor suggests. They instead said, okay, fine, give us the Neuberger Berman account. So wasn't that a failure of their fiduciary responsibility by not insisting on getting the 10 percent slice? That was their due? On the part of Severstall? No, on the part of WHX. No, well, this is actually Severstall who did not ultimately insist on getting the proportionate slice. WHX is responding to what Severstall is requesting. So Severstall, so in Your Honor's, I believe, in Your Honor's scenario, you're asking if Severstall had asked and demanded the 10 percent, would it then have a right to that 10 percent? Yeah, I mean I recognize this isn't real property, but it's sort of like a situation where there's, if I remember my first year of property, a tenancy in common or something like that where husband and wife own a house jointly. If they divorce or they split up, nobody's entitled to say, I want half the house. Cut it down the middle and give me half the house. You're entitled to the value of your share of that property if that tenancy splits up. At least that's the way I've always understood it. I don't know if that quite carries over to this context. But Mr. LeBeau said, and there's nothing implausible about this, it seems to me, some of these assets are mutual funds where there's a penalty for early withdrawal. Some of them may be investments where there's an investment requirement limit. Now maybe he's lying or he's negligently misstating what the case is. I don't know about that. But certainly these are real things that exist in the world that you either literally could not give 10% of an investment where the 10% would come out to $100,000 and there's a $500,000 minimum on that kind of investment by the marketer of that investment or that it would be costly to do that because if you want to divide it up now and you need 10% of this mutual fund's value and you have to sell those shares to do that or transfer those shares, you're doing some kind of thing that requires a penalty. That's what LeBeau said. Now whether that's true or not, I don't know. But it's certainly not crazy to think that that could have been true. Right, and that's my understanding of what was told both to Severstall and WHX. And again, this is beyond sort of the pleadings because they don't really go into it. But they were told they couldn't? That's why they couldn't divide the slice? Both parties were told by LeBeau that they couldn't divide it that way. And I think probably because, and again, we weren't in the case at this point, but my understanding is what was adduced at Discovery was that it would be very, very costly because you'd have to exit various funds and strategies. Well, at least that's what LeBeau said, I think, comes out at the trial. But whether that's true, I don't know whether the trial went into it, whether he was accurate or mistaken or whatever. That's right. That's right. I see my time is just about up. If there's no other questions, we'd ask that the Court affirm the District Court. Thank you. Thank you. Mr. Barton, you've reserved two minutes for rebuttal. Thank you, Your Honor. First of all, there is no agreement. There was no subsequent agreement. That is just flat out wrong. There's, of course, nothing in the complaint about that. In fact, what the trial court found is that DiClemente testified credibly that he did not understand the Neuberger-Berman accounts were the only assets that were going to be transferred. What's in the complaint is also – Isn't it clear that he wrote a letter requesting that transfer or authorizing that transfer? Your Honor, no. No. The transfer was accomplished on November 3rd. His letter, which was not received until November 4th, and what he testified that the letter said and how he understood it and what he wrote and the District Court found that was credible, was that he understood he was only going to receive his portion of the Neuberger-Berman accounts. That's the facts that were found by the District Court. The complaint says exactly that, that they would receive only a portion of the Neuberger-Berman account along with a portion of all or other investments comprising the WHX Pension Trust. That's paragraph 55. Is there anything that alleges or what is the allegation or the factual basis for the allegation that WHX understood that what they were being instructed to do by Lebeau in connection with that letter was not what Severstall wanted? No, because the allegation in paragraph 37, which sets forth the terms of what I call the agreement, which is a signed document between the two parties, and then there's a subsequent conversation in mid-October, or late October, shortly before the transfer, that is alleged in the complaint that Mr. Kass and WHX becomes aware that Lebeau is not going to do what they had been agreed to do. But no one tells Severstall this. He becomes aware, and WHX is the one that accomplishes the transfer on October 3rd. What should they have done at that point? At the very least, WHX should have said to Mr. Lebeau, that's contrary to the agreement, have you cleared this with Severstall, and or said to Severstall, Mr. Lebeau is planning to do something that is contrary to what we agreed in terms of the division of the assets. They should have blown the whistle is what you're saying. They should have blown the whistle and they should not have accomplished the transfer. Was Lebeau at that point an agent of the Severstall Retirement Committee? He is a fiduciary. At that specific timing, he is an investment manager pursuant to an investment management agreement that is signed between WHX. He is a named fiduciary of the WHX Combined Trust, which holds Severstall and WHX assets. So, is he an agent? That really doesn't have a meaning under ERISA, but he is a fiduciary because of the trust that holds the combined assets. Is he a fiduciary of Severstall? In other words, when he speaks to WHX, you're saying that WHX is not entitled to take his instruction or his word that he's acting on behalf of Severstall. He is a fiduciary. I mean, the whole premise of your argument is that WHX should have said, no, I need to be told by someone on the Severstall Retirement Committee, which may be right, but I'm just asking, when Lebeau speaks to them, what is the argument, or why is it, that they're not entitled to take Lebeau as speaking on behalf of Severstall? And it may be because there's nothing. The answer is, there's nothing to suggest that he is. But I'd like to know, what is his status vis-à-vis Severstall at that moment? Remember, we're looking at the complaint, what's alleged in the complaint. But the answer to your question is that if what he did is a breach, and what he did with respect to the transfer is part of the complaint, it is part of the breach, that there has not been a change here in terms of the theory of the case. If they know that he's breaching his fiduciary duty, and to breach what has been agreed upon is a breach of fiduciary duty. But why do they know that? Why do they know that if he is an agent who is authorized to speak for Severstall? That's my point. They don't know that he's violating his relationship with his principal. They don't know that he's breaching his fiduciary duty in saying this. If he comes and says, this is what we've, on the Severstall side, decided to do, what is it that says WHX can't take him at face value at that point? There is nothing in the complaint that suggests that he had that authority, that he represented that authority. He was supposed to figure out how to divide up the 21 different assets. But there was an agreement that each side would get. They would get proportional share. That's what the agreement was. WH knows that that's the agreement. They signed the agreement. There is nothing in the complaint, there's quite frankly nothing in the record, and what the court eventually found is that WHX and Lebeau have this conversation and never informed Severstall that there's been this change. Lebeau doesn't purport to represent this WHX, that he has some authority to speak on behalf of the Severstall plans. Now, the answer to your question is a little bit difficult because the actual document that appoints Lebeau in October of 2008 is between WHX and WPN, Lebeau's company. There is no document between Severstall and WPN. For purposes of RISA and fiduciary status, that's irrelevant. He's still a fiduciary, but he may not be authorized to take certain actions on their behalf. That's what I've been getting at, is he's so authorized. And you're telling me there's nothing in the complaint and nothing in the record that says he was. Correct. I think a fair inference is we have alleged enough to show, A, that there was a breach by Lebeau, that WHX knowingly participated in the breach, and there is equitable relief that is available, and that's enough, and that they were a fiduciary by virtue of appointing Lebeau, by virtue of the control of the WHX trust, which contained the Severstall assets. All right. Thank you, counsel. Thank you, Your Honor. We don't usually have short rebuttals, so thank you. We'll reserve decision.